## CHARLESTON.

### BURNER v. HEVENER.

Submitted January 22, 1891.—Decided February 11, 1891.

*(HOLT, JUDGE, absent.)*

1. RES JUDICATA—BAR.

   A final adjudication of a court of competent jurisdiction upon the merits of a controversy, so long as it remains unreversed, is a bar to any new suit for the same cause of action between the same parties.

2. RES JUDICATA—BAR.

   If the matter in question has been fully tried upon an issue made

up on a rule or motion, and the judgment of the court is so far final that an appeal would lie, then, so long as such judgment remains unreversed on review, rehearing, appeal or otherwise, no new suit can be prosecuted between the same parties to reopen the same question.

3. RES JUDICATA—BAR.

When in a suit in chancery a purchaser at a judicial sale moves the court for a rule against the former owner to show cause why the purchaser should not be awarded a writ of possession, and the former owner files an elaborate answer to the rule in the nature of a cross-bill, claiming a right to the possession upon equitable grounds bearing upon the conscience of the purchaser and fully set out, and the purchaser files a special replication, and the issue between these parties thus made up as to their mutual rights is fairly tried by the court upon extensive proofs on either side, and a decree is rendered of an appealable character, such decree is final between the parties so long as it remains unreversed, and the issue thus decided can not be reopened by an original suit instituted by the losing party.

*H. S. Rucker* for appellee, cited:

33 W. Va. 553, 556; 29 W. Va. 808; 33 W. Va. 464, p't 2, Syll.; 10 W. Va. 256, 285; 16 W. Va. 708, 709, 712; 22 W. Va. 511; 23 W. Va. 760; 22 W. Va. 412; 14 W. Va. 641, p't 14, Syll.; Code, c. 125, ss. 35, 57, 59; 23 W. Va. 50; Code c. 134, s. 4; 20 W. Va. 174; 25 W. Va. 707; 2 Leigh 482; 1 Rob. (old) Pr. 314; 13 Gratt. 644; 25 W. Va. 57; 3 Greenl. Ev. § 326, n.; 1 Greenl. Ev. §§ 82, 86; 1 W. Va. 217; 17 Gratt. 219; 1 Bar. Ch'y Pr. § 478; 3 Greenl. Ev. § 345; 33 W. Va. 759; 2 Min. Inst. 770–776 (s. p.); Id. 766 (s. p.); 21 Gratt. 680; 15 W. Va. 568, 580; 26 W. Va. 468, 478; Id. 775; 16 W. Va 108 p't 12 Syll. 154; Id. 686, p't 4, Syll. 707; 21 W. Va. 477; 1 Perr. Tr. § 215; 2 Patt. & H. 616; 6 Munf. 261; 8 W. Va. 95; 20 W. Va. 611; 1 Munf. 510; 12 W. Va. 247, p't 6, Syll.; 3 W. Va. 572; Com. Cont. 30; 8 Am. & Eng. Ency. L. 738 n. 1; 1 Rob. (old) Pr. 200, 201; 4 Min. Inst. 688 (s. p.); Bar. L. Pr. 132; 2 Bar. Ch'y Pr. 755; 1 Greenl. Ev. § 322; 13 W. Va. 202; 31 W. Va. 450; 6 Munf. 261–264.

*J. W. Arbuckle* for appellee, cited:

8 W. Va. 95; 20 W. Va. 398; 15 W. Va. 577; 26 W. Va. 262; Id. 754; Lom. Dig. 415, 421; 1 Wash. 14; 4 H. & M. 101; 4 Munf. 40; 2 Johns. Ch'y 34; 2 Sto. Eq. § 287; 1

Rob. 148 ; 2 Rob. 16·; 12 W. Va. 282 ; 13 W. Va. 251; 10 W. Va. 250 ; 18 W. Va. 244 ; 20 W. Va. 223 ; 24 W. Va. 551 ; 26 W. Va. 583 ; 1 Herm. Estopp. &c. 479 ; 81 Va. 94 ; Benn. Lis Pend. § 320 ; 3 U. S. Dig. 872.

Lucas, President :

On the 6th day of June, 1887, Allen G. Burner filed his bill in chancery against Uriah Hevener, in which he set out that a certain creditor of his had brought a suit against him in the Circuit Court of Pocahontas county to subject his lands for the payment of his debts ; that in said suit (*Arbogast* v. *Burner etc.*) a tract of one hundred fifty four acres, and an undivided one fourth interest in a large mountain tract, was advertised to be sold by R. S. Turk, special commissioner, on the 4th day of April, 1881. The bill further alleges that on the day of sale the defendant, Uriah Hevener, entered into a parol contract with him as follows :

"That he, Hevener, would buy the land at said commissioner's sale in his own name, but for the use and benefit of this complainant ; and that he was to make the cash payment, and give his own bonds for the deferred payment of the purchase-money ; that complainant was by said agreement to refund the cash-payment to said Hevener and pay the bonds of Hevener for the deferred payments as they became due, and, in the event complainant failed to pay the deferred payments as they became due, said Hevener, in the event he paid the said bonds, was to hold the said lands in trust to secure the repayment to him of all money he so paid and a small debt complainant owed him." Complainant further alleges he was to remain in possession and control of the said lands, and to have the full use and benefit arising therefrom.

The bill then goes on to allege that on the day of sale the defendant, Hevener, bid upon the land, and, finding one Krietler bidding against him, he induced Krietler to stop bidding, by telling him he was bidding on the land for the use of complainant. The lands, by reason of mistake of the auctioneer, were knocked down to one J. H. Arbogast at one thousand two hundred and eighty dollars, both Hevener and Arbogast claiming the bid. "That complain-

ant then agreed with Hevener to further secure him with said land, if he, Hevener, would secure for complainant a debt he owed to said Arbogast of about four hundred dollars, when Arbogast would surrender his bid to Hevener, and allow the sale to be confirmed to said Hevener, as he and complainant had already agreed upon. That this agreement was perfectly understood and made before this sale was confirmed to Hevener, as it was, at one thousand two hundred and eighty dollars." The bill proceeds to allege further that the complainant repaid to Hevener the cash-payment, and a small amount on the other debt, which defendant had assumed to Arbogast, and that complainant has continued in uninterrupted possession of the lands from the 4th day of April, 1881. He also alleges that in the spring of 1882, N. T. Payne, a lumber-dealer, to whom plaintiff had sold a large quantity of timber, offered to repay to said Hevener for complainant the amount he had paid out for the Burner lands, but Hevener refused to accept or receive the money from or through said Payne; and that the defendant, Hevener, having taken up all his bonds for deferred purchase-money, on the 14th of July, 1882, received from the special commissioner a deed for the land; that in the summer of 1885 defendant informed complainant that he had sold the one hundred and fifty four acre tract called the "Byrd Place," and shortly afterwards obtained a judgment for the possession in an action which is now pending on appeal in said Circuit Court.

It is further alleged that in the original suit, in which the lands were sold, defendant has obtained a rule against the complainant to show cause why a writ of possession should not issue in his favor, and that an order was made at the April term, 1887, directing a writ of possession to issue; and the proceedings had and evidence taken under said rule are exhibited as a part of the bill. The relief asked by the bill is for specific execution of the parol contract above set out; that the deed of July 14, 1882, be treated as a trust-deed only, and that the cause be referred to a commissioner to ascertain the amounts properly due from complainant to defendant, and that, if they are liens upon said lands, a fair and proper sale of the lands be made to satisfy

them; and that the defendant be enjoined and restrained from taking possession of said lands or executing any writ of possession, until such fair and proper sale can be made; and for general relief.

Injunction was granted as prayed in the bill on the 30th day of May, 1887. On the 24th day of June, 1887, Hevener answered the bill, and demurred to the same. In his answer he denies generally each and every allegation, charge and insinuation in said bill set forth. He pleads also that the proceedings on the rule, which issued for possession and were decided in his favor, rendered the matter sought to be put in issue *res judicata*. A large amount of testimony was taken on both sides, and the cause was finally removed from the Circuit Court of Pocahontas county to the Circuit Court of Kanawha, where, on the 18th day of March, 1890, a final decree was rendered, from which an appeal has been granted by this Court. The final decree complained of found that the plaintiff was entitled to the relief prayed for; that there was due Hevener two thousand two hundred and ninety dollars and a half, which was ascertained to be a lien on the land. J. W. Arbuckle and H. S. Rucker were appointed special commissioners to sell the land. Before the removal of the cause, however, from the Circuit Court of Pocahontas county, the judge of that court, in vacation, on notice and motion dissolved the injunction, but, sufficient cause being shown against the same, no decree was then made as to costs and damages, nor dismissing the bill.

The first assignment of error is that the bill should have been dismissed as presenting a case which it shows to be *res judicata*. A final adjudication by a court of competent jurisdiction upon the merits of a controversy, so long as it remains unreversed, is a bar to any new suit between the same parties for the same cause of action. This is a rule which attaches to every system of jurisprudence worthy of the name, and is no less beneficial to the public, in order that there should be an end of litigation, than conservative of the private rights of litigants which, once determined, should not be again called in question. From an *a priori* view, we should conclude that, in a court of chancery at

least, the form of the proceedings is immaterial, provided the judgment has been reached upon the merits and with full opportunity for a fair hearing. This *a priori* view we find sustained by the authorities, the more recent ones evincing a general and growing tendency to abolish the distinction between determinations reached upon the trials of rules, motions and collateral orders and judgments upon formal actions and suits. If the matter in question has been fully tried upon an issue made up on a rule or motion, and the judgment of the Court is so far final that an appeal would lie, then, so long as such judgment remains unreversed on review, rehearing, appeal or otherwise, no new suit can be prosecuted between the same parties to reopen the same question. Orders made upon motions, petitions, or rules, if they come within the purview of our statute, (chapter 135 of the Code) are appealable in like manner as if entered on any other pleadings. That chapter, in its first section, provides that an appeal will lie in any case in chancery wherein there is a decree or order dissolving or refusing to dissolve an injunction, or requiring money to be paid, or real estate to be sold, or the possession or title of the property to be changed, or adjudicating the principles of the cause. A purchaser at a judicial sale, when he has any relief to ask, becomes a *quasi* party to the cause, and may proceed by motion or by petition or a rule to show cause, which is, in effect, the same as a petition. 2 Daniell, Ch'y Pr. 1592. Applying these principles to this case, we find that in the case *Arbogast* v. *Burner, etc.*, Uriah Hevener, who purchased the lands of Allen C. Burner at a judicial sale in said case, moved the Court for a rule against Burner, who remained in possession of the land, to show cause why a writ of possession should not be issued against him to remove him from the lands, and place the purchaser, Hevener, in possession. This rule issued the 22d day of June, 1886, and on motion of Allen C. Burner, made on the 23d day of June, 1886, he was given leave to file his answer within thirty days after the adjournment of the court. This answer was subsequently filed, was very elaborate, and was to all intents and purposes a cross-bill; so much so that the Circuit Court treated it as a cross-bill,

and permitted Hevener, the purchaser, to file what is styled a "replication," putting in issue all the new matters alleged in the answer or cross-bill of Burner. The issue having been thus made up, a large amount of testimony was taken upon either side, and the matter finally came up before the court for hearing, and the court reached a decision, and entered an order upon the 6th day of April, 1887. A decree was entered reciting the papers formerly read, the rule, answer, replication to the answer and depositions of witnesses, whereupon it was decreed as follows : "This Court being of the opinion that there is nothing in the cause shown to deprive Uriah Hevener of the writ of possession in the rule mentioned, it is adjudged, ordered, and decreed that, upon application of Uriah Hevener, the clerk of this Court issue a writ of possession for the land embraced in a deed from R. S. Turk, special commissioner in this cause, to said Uriah Hevener, dated the 14th day of July, 1882, directed to the sheriff of this county, whose duty it shall be to place said Hevener in possession of the one hundred and fifty four acres, one thousand one hundred and sixty acres, and nine hundred and four acres of land embraced in the said deed. It is further adjudged, ordered and decreed that Uriah Hevener recover his costs in this behalf expended." It was further ordered that a suspension for sixty days should be had, to give Burner an opportunity to appeal, upon his executing the usual bond.

It was after this decree that Burner brought the suit now under consideration, and obtained an injunction against the execution of the writ of possession. He files as an exhibit with his bill all of the proceedings and record under the rule, including the depositions. The bill in his new suit was, in substance, the same as his answer to the rule, and its prayer substantially identical with the prayer of the answer to the cross-bill.

Looking at the action of the court from an equitable standpoint, we must regard its judgment in favor of the purchaser declaring him entitled to the possession of the land in question as equivalent to the dismissal of the cross-bill, and a refusal of the relief embraced in its special prayer, or covered by the general prayer for relief, which it also

contained. The question, then, is whether, in the light of the principles which we have already laid down, Burner, the plaintiff in the suit, was not estopped by the former adjudication. As before observed, the older authorities are not quite so emphatic upon the subject of estoppel upon a decision by motion as those of more recent date. Thus Mr. Bigelow, on page 56 of the edition of 1886 of his treatise on the Law of Estoppel, observes :

"The judgment further should have been final. We have seen that a preliminary decree or judgment, or a decision upon a motion in the course of a trial, can not ordinarily result, if the case go no further, in precluding the parties from drawing the matter into issue again. The case must have gone to a complete termination, so that nothing more is necessary to settle the rights of the parties or the extent of those rights. Thus, an order in garnishment, directing the garnishee to deliver certain property of the defendant to the sheriff for sale, from the proceeds of which the garnishee is to be paid a sum named in the order, is not an adjudication that the defendant owes the garnishee the amount fixed by the order, unless there was an issue concerning the sum due."

On the other hand in an edition of the same date Mr. Herman says: "A motion is an application made to a judge or chancellor or to the same parties when constituting a court in open court for the purpose of obtaining a rule or order directing some act to be done in favor of the applicant. This is usually an incidental proceeding to an action, but it may be wholly distinct from that kind of proceeding. The great variety of objects for which this class of proceedings are available render it impossible to classify the numerous adjudications relating to them, and general principles can only be stated. There may be the following general classification made: (1) Orders made upon motions respecting collateral questions arising in the course of a trial ; (2) final orders affecting substantial rights, for motions from the determination of which an appeal lies, and those which are unappealable. All motions affecting the substantial rights of parties are appealable, and therefore final, unless reversed or modified by an appellate tribu-

nal, and are placed on the same basis as any final judgment. Whenever a motion admits of grave discussion and deliberation, and is made part of the record of a cause, and subject to a review in another court, the decision by a court upon such motion is generally regarded as a final judgment or adjudication, and the rule of *res judicata* applies." Herm. Estop. § 472.

To the same effect is the authority of Mr. Black in his recent and able book on Judgments (2 Black Judgm. § 691): "According to the doctrine of the earlier cases (and some more recent decisions) the determination of a motion or summary application is not *res judicata*, so as to prevent the parties from drawing the same matters in question again in the more regular form of an action. Thus a party is not estopped from bringing an action to set aside a judicial sale, made without authority, by the fact that the court may have overruled a motion to set aside the order confirming such sale. So, when a motion to open a judgment rendered on a warrant of an attorney is refused, the party may resort to equity, and the denial of such a motion is not such a prior adjudication as to bar him."

But it is now said that this rule no longer obtains in its former strictness; and regard is now had less to the form of the proceeding, and more to the substance and condition of the decision. Further, there is a distinction to be noticed between orders made upon motions respecting collateral questions arising in the course of a trial and final orders affecting substantial rights and from which an appeal lies. The latter are *res judicata*, and binding upon the parties, unless reversed or modified by an appellate tribunal. Following these principles, it is held that, when a motion to set aside a verdict is overruled and judgment rendered thereon, a similar motion in a subsequent suit between the same parties, or their privies in estate; to set aside a verdict settling the same questions in the same way, must be overruled. So to a complaint by a judgment defendant to have a judgment declared satisfied it is a good answer on the part of the judgment plaintiff that the same matters alleged in the complaint were set up in answer to a motion for leave to issue execution on the judgment, and that such matters were in that proceeding adjudicated.

In Louisiana it is held that, if the form of procedure by rule instead of injunction to arrest an execution has been adopted without objection, and a decision rendered thereon after issue joined on the merits, the defendant in execution, by whom the rule was taken, can not afterward renew the litigation by resorting to an injunction."

Although in our own State we have no adjudication upon this immediate point which I have been discussing, yet the principles announced in our own decisions fully warrant the conclusion which I have reached. In the case of *Gallaher* v. *City of Moundsville* (decided at the present term) the cases will be found collated, and that case itself is a strong authority in favor of the conclusions I have reached. *Western M. & M. Co.* v. *Virginia C. C. Co.*, 10 W. Va. 250; *Henry* v. *Davis*, 13 W. Va. 230 ; *Mason* v. *Bridge Co.*, 20 W. Va. 223 *; Wandling* v. *Straw*, 25 W. Va. 692 ; *McCoy* v. *McCoy*, 29 W. Va. 794 ; (2 S. E. Rep. 809.)

I am of opinion, therefore, and for the reasons stated, that the plea of *res judicata* should have been sustained by the Circuit Court, and the bill dismissed. The decree of the Circuit Court of Kanawha county must be reversed.

REVERSED.