301 S.E.2d 216

**Marjorie Long CONLEY, et al., etc.**

v.

**The Hon. George L. SPILLERS, Judge, etc.**

**No. 15697.**

Supreme Court of Appeals of West Virginia.

March 15, 1983.

---

Edward A. Zagula, Zagula & Hill, Weirton, for petitioners.

William J. Ridgway, Weirton, for respondent.

Charles D. Bell, Wellsburg, for Mfrs. Light & Heat Co.

William E. Watson, Barnes, Watson, Cuomo, Hinerman & Fahey, Wellsburg, for Tri-State Asphalt Corp.

George J. Anetakis, Frankovitch & Anetakis, Weirton, for James White Const. Co.

MILLER, Justice:

In this original prohibition case, we are asked to apply the doctrine of collateral estoppel and hold that the trial court had exceeded its legitimate authority in failing to grant a summary judgment in favor of the plaintiffs, Marjorie Long and Floyd Conley, petitioners herein, and against the defendants, the City of Weirton and Manufacturer's Light & Heat Company (hereinafter Gas Company). The latter is an intervenor herein. We granted a motion to intervene to the two other prior defendants, Tri-State Asphalt Corporation and James White Construction Company, who were found not to be liable at an earlier trial and who assert the benefit of collateral estoppel. For the reasons set out herein, we decline to issue a writ of prohibition.

The petitioners in this case are husband and wife. The wife sustained personal injuries in a gas explosion and her husband brings his derivative claim for loss of consortium and for necessary medical and hospital expenses incurred on behalf of his wife. The gas explosion which gave rise to this litigation was the subject matter of previous litigation which was appealed to this Court in *Long v. City of Weirton*, 158 W.Va. 741, 214 S.E.2d 832 (1975). The plaintiff in that case was the minor daughter of Mrs. Conley, the petitioner herein. Mrs. Conley acted as *guardian ad litem* or next friend along with her husband in bringing the suit for her daughter's injuries.

The jury in the trial of *Long v. City of Weirton, supra,* returned a verdict against the Gas Company and the City of Weirton. It returned no verdict against the two other defendants. The trial court set the judg-

ment aside as to the City of Weirton based on its claim of municipal immunity and an appeal followed. We determined that the defense of municipal immunity was no longer available and reversed the trial court's exoneration of the City of Weirton and reinstated the jury verdict. We also affirmed the jury verdict against the Gas Company as well as the exoneration of Tri-State Asphalt Corporation and James White Construction Company. 158 W.Va. 973, 214 S.E.2d at 864.[1]

As might be expected, the petitioners in this case who prevailed in the first case are arguing for collateral estoppel. The Gas Company's main argument against collateral estoppel is that Mrs. Conley is pursuing her own cause of action in this case, while in the earlier case, she was merely a nominal party as a next friend or *guardian ad litem* pursuing the personal injury claim of her injured daughter. It contends that this is a separate cause of action which under principles of *res judicata* is not controlled by *Long v. City of Weirton.* It also asserts that there has been a substantial change in our law of contributory negligence as a result of *Bradley v. Appalachian Power Co.*, 163 W.Va. 332, 256 S.E.2d 879 (1979), which was decided after *Long v. City of Weirton.* Consequently, the Gas Company maintains that it should have the benefit of these new principles in the present litigation.

As a preliminary consideration, it is necessary to differentiate between the doctrine of *res judicata* and collateral estoppel. We have defined *res judicata* in somewhat varying, although not inconsistent, degrees of terminology. In Syllabus Point 1 of *In re Estate of McIntosh*, 144 W.Va. 583, 109 S.E.2d 153 (1959), we summarized *res judicata* based on one of our earlier cases:

" 'An adjudication by a court having jurisdiction of the subject-matter and the parties is final and conclusive, not only as to the matters actually determined,

1. It appears that after the decision in *Long v. City of Weirton,* several related claims were settled including a wrongful death claim for the Conleys' other infant daughter and property damage claims to the Conleys' home and personal property.

but as to every other matter which the parties might have litigated as incident thereto and coming within the legitimate purview of the subject-matter of the action. It is not essential that the matter should have been formally put in issue in a former suit, but it is sufficient that the *status* of the suit was such that the parties might have had the matter disposed of on its merits. An erroneous ruling of the court will not prevent the matter from being *res judicata.*' Point 1, Syllabus, *Sayre's Adm'r v. Harpold,* 33 W.Va. 553 [11 S.E. 16]." [2]

The underlying purpose of the doctrine of *res judicata* was initially to prevent a person from being "twice vexed for one and the same cause." *State ex rel. Connellsville By-Product Coal Company v. Continental Coal Company,* 117 W.Va. 447, 449, 186 S.E. 119, 120 (1936). There are also additional public policy reasons as expressed in *Montana v. United States,* 440 U.S. 147, 153–54, 99 S.Ct. 970, 973–74, 59 L.Ed.2d 210, 217 (1979):

> "To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." (Footnote omitted)

■ These same policy considerations also support the doctrine of collateral estoppel which is related in some degree to *res judicata.* Collateral estoppel is designed to foreclose relitigation of issues in a second suit which have actually been litigated in the earlier suit even though there may be a difference in the cause of action between the parties of the first and second suit. We have made this summary of the doctrine of collateral estoppel:

> "But where the causes of action are not the same, the parties being identical or in privity, the bar extends to only those matters which were actually litigated in the former proceeding, as distinguished from those matters that might or could have been litigated therein, and arises by way of estoppel rather than by way of strict *res adjudicata."* *Lane v. Williams,* 150 W.Va. 96, 100, 144 S.E.2d 234, 236 (1965).

■ The doctrine of collateral estoppel also requires as does *res judicata* that the first judgment be rendered on the merits and be a final judgment by a court having competent jurisdiction over the subject matter and the parties.[3] Because collateral estoppel recognizes that the second suit may be on a different cause of action, its focus is on whether the issues which are being sought to be litigated in the second suit were actually litigated in the first suit. Whereas, the central inquiry on a plea of *res judicata* is whether the cause of action in the second suit is the same as in the first suit. This distinction was summarized in

---

**2.** Although the doctrine of *res judicata* may be generally defined, its preclusive effect may be difficult to determine in the individual case, particularly as to the identity of the cause of action and whether certain issues could have been raised in the earlier action. 46 Am.Jur.2d *Judgments* §§ 404–14 & 430–37 (1969).

In some of our cases, we have attempted a further refinement of what is the same cause of action and parties as illustrated by Syllabus Point 1 of *Pearson v. Dodd,* 159 W.Va. 254, 221 S.E.2d 171 (1975):

"'To justify the application of the doctrine of *res judicata,* " * * * there must be a concurrence of four conditions, namely: (1) identity in the thing sued for; (2) identity of the cause of action; (3) identity of persons, and of parties to the action; (4) identity of the quality in the person for or against whom the claim is made." Opinion. *Marguerite Coal*

*Co. v. Meadow River Lumber Co.,* 98 W.Va. 698 [127 S.E. 644].' *Syllabus, Hannah v. Beasley,* 132 W.Va. 814, 53 S.E.2d 729 (1949)." This identity test may be helpful in some cases but it has some redundancy. The term "identity of the thing sued for" is probably embraced within the term "identity of the cause of action." Moreover, the latter two identities relating to persons and parties and their quality is an attempt to cover the proposition that the principle of *res judicata* is binding not only on the parties to the first suit but their privies. It does not appear that we have had occasion to fully explicate the meaning of these "identities."

**3.** *E.g., Johnson v. Huntington Moving & Storage, Inc.,* 160 W.Va. 796, 239 S.E.2d 128 (1977); *Chesapeake and Ohio Railroad Company v. McDonald,* 65 W.Va. 201, 63 S.E. 968 (1909); *Burner v. Hevener,* 34 W.Va. 774, 12 S.E. 861 (1891).

note 5 of *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552, 559 (1979):

"Under the doctrine of res judicata, a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action. Under the doctrine of collateral estoppel, on the other hand, the second action is upon a different cause of action and the judgment in the prior suit precludes relitigation of issues actually litigated and necessary to the outcome of the first action."

A common requirement for the application of *res judicata* and collateral estoppel was that there had to be mutuality of parties between the first suit which had proceeded to judgment and the second suit, where the defense of *res judicata* or collateral estoppel was being asserted. The concept of mutuality extended not only to the named parties but to those who were privy to them. *Barnett v. Wolfolk*, 149 W.Va. 246, 140 S.E.2d 466 (1965); *United Fuel Gas Company v. Hays Oil & Gas Company*, 111 W.Va. 596, 163 S.E. 443 (1932).[4] The term "privity" is a somewhat fluid concept. In the Syllabus of *Cater v. Taylor*, 120 W.Va. 93, 196 S.E. 558 (1938), we said: "Privity, in a legal sense, ordinarily denotes 'mutual or successive relationship to the same rights of property'." And, in Syllabus Point 1 of *Gentry v. Farruggia*, 132 W.Va. 809, 53 S.E.2d 741 (1949), we said:

"Where, the principle of *res judicata* is invoked in order for it to apply it must appear either that the parties in the present case are identical with those in the former litigation or that their privity with them was such as to give them a common interest in the outcome thereof."[5]

Implicit in the traditional concept of mutuality was the principle that before one could be afforded the benefit of a judgment through the assertion of *res judicata* or collateral estoppel such party had to be bound to the judgment. For this reason, it was customary to state that a stranger to the judgment could not assert its benefits. The underlying premise for requiring mutuality of parties was that it would be unfair for the party seeking the advantage of the judgment not to be bound by it.

This premise, however, failed to take into account that the party who is bound to the judgment has had an opportunity to fully litigate his position in the first suit as to the same issue being asserted in the second suit.[6] The Supreme Court summarized this

**4.** Syllabus Point 4 of *United Fuel Gas Company v. Hays Oil & Gas Company, supra*, stated: "A judgment binds only parties and privies, not strangers to it. Against strangers it is not evidence to prove any facts involved in the judgment."

Our rule of mutuality is not without exception. In *State Farm Mutual Automobile Ins. Co. v. De Wees*, 143 W.Va. 75, 101 S.E.2d 273 (1957), we held that an insurance carrier was barred from asserting its insured's property damage claim where the insured has previously recovered a judgment against the defendant for personal injuries. In the Syllabus of *Willigerod v. Sharafabadi*, 151 W.Va. 995, 158 S.E.2d 175 (1967), although we did not use the term "collateral estoppel," we held that:

"Where a master and a servant are sued jointly in an action for recovery of damages resulting from personal injuries, if the action is based solely on the alleged tortious conduct of the servant, and he is, by a final judgment, acquitted of guilt of the tortious conduct alleged as a basis for the action, there can be no recovery thereafter against the master on the basis of such alleged cause of action."

**5.** "Privity" refers to the legal relationship, while the term "privy" is used to describe a person in a privity relationship. Black's Law Dictionary 1079, 1080 (5th ed. 1979). Another commonly used definition of "privy" is found in *Bernhard v. Bank of America Nat. Trust & Sav. Ass'n.*, 19 Cal.2d 807, 811, 122 P.2d 892, 894 (1942):

"A privy is one who, after rendition of the judgment, has acquired an interest in the subject matter affected by the judgment through or under one of the parties, as by inheritance, succession, or purchase. (See cases cited in 2 Black, Judgments (2d Ed.), sec. 549; 35 Yale L.J. 607, 608; 34 C.J. 973, 1010, 1012; 15 R.C.L. 1016.)" (Footnote omitted)

**6.** It is generally recognized that under due process concepts a judgment cannot be binding on one who is not a party to the original suit as stated in note 7 of *Parklane Hosiery Co. v. Shore, supra*:

"It is a violation of due process for a judgment to be binding on a litigant who was not a party or a privy and therefore has never had an opportunity to be heard. *Blonder-Tongue Laboratories, Inc. v. University of Illinois*

point in *Parklane Hosiery Co. v. Shore*, 439 U.S. at 328, 99 S.Ct. at 650, 58 L.Ed.2d at 560: "By failing to recognize the obvious difference in position between a party who has never litigated an issue and one who has fully litigated and lost, the mutuality requirement was criticized almost from its inception."

The doctrine of mutuality has been undergoing modification as it relates to collateral estoppel.[7] Judge Traynor is generally credited with initiating the first change in the doctrine in *Bernhard v. Bank of America Nat. Trust & Sav. Ass'n.*, 19 Cal.2d 807, 813, 122 P.2d 892, 895 (1942), which held that a defendant who was not bound to the judgment could assert it as *res judicata* against the plaintiff and set out these guidelines:

"In determining the validity of a plea of res judicata three questions are pertinent: Was the issue decided in the prior adjudication identical with the one presented in the action in question? Was there a final judgment on the merits? Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?"[8]

A majority of jurisdictions now recognize that under certain conditions mutuality of parties is no longer necessary in order to enforce a judgment against a party or his privy. *E.g., Parklane Hosiery Co. v. Shore, supra; Morneau v. Stark Enterprises, Ltd.*, 56 Haw. 420, 539 P.2d 472 (1975); *Hunter v. City of Des Moines*, 300 N.W.2d 121 (Iowa 1981); *Hossler v. Barry*, 403 A.2d 762 (Me.1979); *MPC, Inc. v. Kenny*, 279 Md. 29, 367 A.2d 486 (1977); *Oates v. Safeco Ins. Co. of America*, 583 S.W.2d 713 (Mo.1979); *Gammel v. Ernst & Ernst*, 245 Minn. 249, 72 N.W.2d 364, 54 A.L.R.2d 316 (1955); *Cutter v. Town of Durham*, 120 N.H. 110, 411 A.2d 1120 (1980); *Ettin v. Ava Truck Leasing, Inc.*, 100 N.J.Super. 515, 242 A.2d 663 (1968), *aff'd in part and rev'd in part on other grounds*, 53 N.J. 463, 251 A.2d 278; *Anco Mfg. & Supply Company, Inc. v. Swank*, 524 P.2d 7 (Okl.1974); *State Farm Fire & Cas. Co. v. Century Home Compon., Inc.*, 275 Or. 97, 550 P.2d 1185 (1976); *State v. Dupard*, 93 Wash.2d 268, 609 P.2d 961 (1980); Annot., 31 A.L.R.3d 1044 (1970). Such enforcement is ordinarily by way of collateral estoppel since the person seeking collateral estoppel does not have the same

*Foundation*, 402 U.S. 313, 329, 91 S.Ct. 1434 [1443, 28 L.Ed.2d 788]; *Hansberry v. Lee*, 311 U.S. 32, 40, 61 S.Ct. 115 [117, 85 L.Ed. 22], 132 A.L.R. 741."
*See also Evans v. Hale*, 131 W.Va. 808, 50 S.E.2d 682 (1949). The due process problem does not arise where a stranger to the judgment seeks to enforce it against a party to the judgment since the party has already had his day in court in the suit where the prior judgment was rendered.

7. Commentators are generally in accord with the abolition of strict mutuality of parties but recognize the need for some limitation on the right of a stranger to enforce a prior judgment. *E.g.,* Currie, *Civil Procedure: The Tempest Brews*, 53 Cal.L.Rev. 25 (1965); George, *Sweet Uses of Adversity: Parklane Hosiery and the Collateral Class Action*, 32 Stan.L.Rev. 655 (1980); Kempkes, *Issue Preclusion, Parklane Hosiery Co. v. Shore Revisited*, 31 Drake L.Rev. 111 (1981); Schroeder, *Relitigation of Common Issues: The Failure of Nonparty Preclusion and an Alternative Proposal*, 67 Iowa L.Rev. 917 (1982); Semmel, *Collateral Estoppel, Mutuality and Joinder of Parties*, 68 Col.L.Rev. 1457 (1968). As to its impact in product liability cases, *see* Erlenbach, *Offensive Collateral Estoppel and Products Liability: Reasoning With the Unreasonable*, 14 St. Mary's L.J. 19 (1982).

8. While commentators credit Judge Traynor with changing the mutuality rule, Currie, *Civil Procedure: The Tempest Brews, supra;* Kempkes, *Issue Preclusion, Parklane Hosiery Co. v. Shore Revisited, supra,* it would appear that he did not think this was so as evidenced by this quotation from *Bernhard*, 19 Cal.2d at 812, 122 P.2d at 895:

"Many courts have abandoned the requirement of mutuality and confined the requirement of privity to the party against whom the plea of res judicata is asserted. (*Coca Cola Co. v. Pepsi-Cola Co.*, [6 W.W. Harr 124, 36 Del. 124, 172 A. 260]; *Liberty Mutual Ins'r. Co. v. George Colon & Co.*, 260 N.Y. 305, [183 N.E. 506]; *Atkinson v. White*, 60 Me. 396; *Eagle, etc., Insur. Co. v. Heller*, 149 Va. 82, [140 S.E. 314, 57 A.L.R. 490]; *Jenkins v. Atlantic Coast Line R. Co.*, 89 S.C. 408, [71 S.E. 1010]; *United States v. Wexler*, [D.C.,] 8 F.(2d) 880. See *Good Health Dairy Products Corp. v. Emery*, 275 N.Y. 14, [9 N.E.2d 758, 112 A.L.R. 401].) The commentators are almost unanimously in accord. 35 Yale L.J. 607; 9 Va.L.Reg. (N.S.) 241; 29 Ill.L.Rev. 93; 18 N.Y.U.L.Q.R. 565, 570; 12 Corn.L.Q. 92." (Brackets in original)

cause of action in the technical sense as used in the doctrine of *res judicata*.

The trend away from the strict application of mutuality of parties has brought about some new terminology. Some courts and commentators use the term "issue preclusion" in lieu of the traditional terms "*res judicata*" or "collateral estoppel."[9] There is also a differentiation made as to whether the plaintiff is asserting collateral estoppel or issue preclusion against a defendant or whether the defendant seeks to assert it against the plaintiff.

Where a plaintiff presses for collateral estoppel, it is said to be "offensive" on the theory that the plaintiff is using the estoppel as an affirmative device to avoid having to prove liability against the defendant.

When the defendant asserts collateral estoppel against the plaintiff, it is termed "defensive" because the defendant seeks to defend and bar the plaintiff's cause of action by a prior adverse judgment rendered against the plaintiff.[10]

Most courts which permit a stranger to the first action to assert collateral estoppel in the second action look to several general inquiries: Whether the issues presented in the present case are the same as presented in the earlier case; whether the controlling facts or legal principles have changed substantially since the earlier case; and, whether there are special circumstances that would warrant the conclusion that enforcement of the judgment would be unfair.[11]

---

**9.** *See* note 7, *supra.*

**10.** In note 4 of *Parklane Hosiery Co. v. Shore*, 439 U.S. at 326, 99 S.Ct. at 649, 58 L.Ed.2d at 326, the Supreme Court summarized the offensive-defensive concept as follows:

"In this context, offensive use of collateral estoppel occurs when the plaintiff seeks to foreclose the defendant from litigating an issue the defendant has previously litigated unsuccessfully in an action with another party. Defensive use occurs when a defendant seeks to prevent a plaintiff from asserting a claim the plaintiff has previously litigated and lost against another defendant."

**11.** These general inquiries parallel those set out in *Montana v. United States*, 440 U.S. 147, 155, 99 S.Ct. 970, 974, 59 L.Ed.2d 210, 218 (1979):

"To determine the appropriate application of collateral estoppel in the instant case necessitates three further inquiries: first, whether the issues presented by this litigation are in substance the same as those resolved [in the earlier case]; second, whether controlling facts or legal principles have changed significantly since the [earlier] judgment; and finally, whether other special circumstances warrant an exception to the normal rules of preclusion."

Section 28 of the Restatement (Second) of Judgments (1982) covers exceptions to the general rule of issue preclusion or collateral estoppel as between parties and by virtue of Section 29 they are made available as against a nonparty who is asserting collateral estoppel. Those which relate to special circumstances in Section 28 are:

"(1) The party against whom preclusion is sought could not, as a matter of law, have obtained review of the judgment in the initial action; or

\*　\*　\*　\*　\*　\*

"(4) The party against whom preclusion is sought had a significantly heavier burden of persuasion with respect to the issue in the initial action than in the subsequent action; the burden has shifted to his adversary; or the adversary has a significantly heavier burden than he had in the first action; or

"(5) There is a clear and convincing need for a new determination of the issue (a) because of the potential adverse impact of the determination on the public interest or the interests of persons not themselves parties in the initial action, (b) because it was not sufficiently foreseeable at the time of the initial action that the issue would arise in the context of a subsequent action, or (c) because the party sought to be precluded, as a result of the conduct of his adversary or other special circumstances, did not have an adequate opportunity or incentive to obtain a full and fair adjudication in the initial action."

Section 29 also lists these special circumstances that may foreclose utilization of collateral estoppel:

"(2) The forum in the second action affords the party against whom preclusion is asserted procedural opportunities in the presentation and determination of the issue that were not available in the first action and could likely result in the issue being differently determined;

\*　\*　\*　\*　\*　\*

"(4) The determination relied on as preclusive was itself inconsistent with another determination of the same issue;

"(5) The prior determination may have been affected by relationships among the parties to the first action that are not present in the subsequent action, or apparently was based on a compromise verdict or finding;

"(6) Treating the issue as conclusively determined may complicate determination of issues in the subsequent action or prejudice the interests of another party thereto."

An additional factor to be considered involves the situation where the plaintiff is seeking collateral estoppel against a defendant where the plaintiff was not a party to the first litigation. Courts have recognized that it is possible for a plaintiff to deliberately avoid consolidation or joinder in the earlier suit where there are common questions of law and fact in order to wait and see how a fellow plaintiff's suit is decided.

If the first suit is successful then the plaintiff can seek to utilize its judgment by way of collateral estoppel in his suit. If the first suit is unsuccessful, since he was not a party to that suit the judgment cannot be asserted against him by the defendant. Because one of the purposes underlying the collateral estoppel doctrine is to limit repetitive litigation and encourage joinder, courts have concluded that a plaintiff may be denied collateral estoppel benefits if he cannot advance a substantial reason why he did not join in the original litigation.[12] The United States Supreme Court in *Parklane Hosiery Co. v. Shore*, 439 U.S. at 330–31, 99 S.Ct. at 651–52, 58 L.Ed.2d at 561–62, expressed this point as follows:

> "Offensive use of collateral estoppel, on the other hand, creates precisely the opposite incentive. Since a plaintiff will be able to rely on a previous judgment against a defendant but will not be bound by that judgment if the defendant wins, the plaintiff has every incentive to adopt a 'wait and see' attitude, in the hope that the first action by another plaintiff will result in a favorable judgment. *E.g., Nevarov v. Caldwell*, 161 Cal.App.2d 762, 767–768, 327 P.2d 111, 115; *Reardon v. Allen*, 88 N.J.Super. 560, 571–572, 213 A.2d 26, 32. Thus offensive use of collateral estoppel will likely increase rather than decrease the total amount of litigation, since potential plaintiffs will have everything to gain

and nothing to lose by not intervening in the first action.

\* \* \* \* \* \*

> "... The general rule should be that in cases where a plaintiff could easily have joined in the earlier action ... a trial judge should not allow the use of offensive collateral estoppel." (Footnote omitted)

*See also MFA Mut. Ins. Co. v. Howard Construction Co., supra; Anco Mfg. & Supply Company, Inc. v. Swank, supra; Bahler v. Fletcher*, 257 Or. 1, 474 P.2d 329 (1970).

We recognize that a stranger's right to utilize the doctrine of collateral estoppel is not automatic because it may depend on the peculiar facts of a given case. Accordingly, we follow the rule stated in *Parklane Hosiery Co. v. Shore*, 439 U.S. at 331, 99 S.Ct. at 651, 58 L.Ed.2d at 562, that the trial court should have a rather broad discretion in determining when it should be applied:

> "We have concluded that the preferable approach for dealing with these problems in the federal courts is not to preclude the use of offensive collateral estoppel, but to grant trial courts broad discretion to determine when it should be applied." (Footnote omitted)

*See also Hossler v. Barry, supra.*

Because the application of the doctrine of collateral estoppel is discretionary with the trial court and rests upon a number of factual predicates, we decline to issue a writ of prohibition on the basis that the trial court abused its discretion in failing to enforce collateral estoppel, under the rule stated in Syllabus Point 2 of *State ex rel. Peacher v. Sencindiver*, 160 W.Va. 314, 233 S.E.2d 425 (1977):

> "A writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court has no jurisdiction or having

---

12. Section 29(3) of the Restatement (Second) of Judgments (1982) frames this issue in terms as follows:

"The person seeking to invoke favorable preclusion, or to avoid unfavorable preclu-

sion, could have effected joinder in the first action between himself and his present adversary."

such jurisdiction exceeds its legitimate powers. *W.Va.Code* 53–1–1."

*See also State ex rel. Maynard v. Bronson,* 167 W.Va. 35, 277 S.E.2d 718 (1981); *State ex rel. Heck's v. Gates,* 149 W.Va. 421, 141 S.E.2d 369 (1965).

 It is urged that we consider this matter under the prohibition standards set out in Syllabus Point 1 of *Hinkle v. Black,* 164 W.Va. 112, 262 S.E.2d 744 (1979):

"In determining whether to grant a rule to show cause in prohibition when a court is not acting in excess of its jurisdiction, this Court will look to the adequacy of other available remedies such as appeal and to the over-all economy of effort and money among litigants, lawyers and courts; however, this Court will use prohibition in this discretionary way to correct only substantial, clear-cut, legal errors plainly in contravention of a clear statutory, constitutional, or common law mandate which may be resolved independently of any disputed facts and only in cases where there is a high probability that the trial will be completely reversed if the error is not corrected in advance."

The relevant criteria in *Hinkle v. Black* for the purposes of this case is that the legal error must be "plainly in contravention of a clear statutory, constitutional, or common law mandate which may be resolved independently of any disputed facts." However, many of the issues surrounding the right to invoke collateral estoppel may rest on disputed factual issues. One of the important inquiries in determining whether a plaintiff is entitled to assert collateral estoppel against a defendant who has had an adverse judgment rendered against him in a prior proceeding arising out of the same transaction, is whether the plaintiff could have easily joined in the original litigation.

As earlier noted, if the plaintiff could have easily joined in the original suit, most courts will not permit him to invoke the doctrine of collateral estoppel. The resolution of this issue often depends on a mixed question of law and fact which the trial court must resolve. There may be factual disputes which remove the issue from the *Hinkle v. Black* rule.[13]

While the Gas Company asserts that collateral estoppel should be denied in this case because our rule of contributory negligence has been changed since *Long v. City of Weirton,* we do not see how this benefits the Gas Company since our rule is now more liberal. *Bradley v. Appalachian Power Co., supra.* The Gas Company does not assert that it has a defense of contributory negligence as against the petitioners in this case, which it did not have in the original action because the plaintiff was a child of tender years. However, this type of assertion can arise and would have to be resolved by the trial court in determining whether to allow the plaintiff the benefit of collateral estoppel.[14] There may be some balancing of facts necessary to determine whether the contributory negligence defense is viable. Again, this suggests why resolution of these issues is inappropriate by way of a writ of prohibition in this Court.

13. In this case, the petitioners suggest that the reason this case was not originally consolidated with the original case of *Long v. City of Weirton* was that one or more of the defendants objected to consolidation although petitioners concede that there is nothing in the *Long v. City of Weirton* record that demonstrates this fact by way of a motion or order. In this situation, the trial court would have to consider matters outside the record and make an independent determination of what may be a controverted issue.

14. As pointed out in the earlier portion of the opinion, one of the general tests for permitting collateral estoppel is whether the issues were the same in the earlier and present litigation. Obviously, if the defendants in the earlier case were precluded from raising contributory negligence because of the infant's age but could do so in the second case against the adult mother, it would be unfair to foreclose the defendants from raising this issue. Even where the defense might be asserted but the child has the benefit of a presumption against contributory negligence, it may be unfair to allow collateral estoppel. As indicated in note 11, *supra,* this is one factor to consider as a possible bar to estoppel if "[t]he party against whom preclusion is sought had a significantly heavier burden of persuasion with respect to the issue in the initial action than in the subsequent action." Restatement (Second) Judgments § 28(4) (1982).

The intervenors in this case seek to assert the judgment in *Long v. City of Weirton* as a bar to the plaintiffs' present suit. They misperceive a fundamental point relating to the utilization of collateral estoppel which is that any person against whom collateral estoppel is asserted must have had a prior opportunity to have litigated his claim. This is a basic due process requirement. *See* note 6, *supra*. In *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 329, 91 S.Ct. 1434, 1443, 28 L.Ed.2d 788, 800 (1971), this point was made:

"Some litigants—those who never appeared in a prior action—may not be collaterally estopped without litigating the issue. They have never had a chance to present their evidence and arguments on the claim. Due process prohibits estopping them despite one or more existing adjudications of the identical issue which stand squarely against their position."

Thus, in *Humphreys v. Tann*, 487 F.2d 666 (6th Cir.1973), *cert. denied*, 416 U.S. 956, 94 S.Ct. 1970, 40 L.Ed. 307, the court concluded that a plaintiff's personal representative was not collaterally estopped from suing the owners of a small private plane which had collided with a commercial plane in which the plaintiff was a passenger. Earlier litigation between other passengers and the defendant-owners had resulted in a verdict in favor of the defendants. The court held that since the plaintiff's personal representative was not a party to the earlier judgment, it could not be asserted against him because he had not had his day in court in the first action. The court, citing *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, supra*, concluded:

"While the doctrine of collateral estoppel permits a prior judgment to preclude relitigation of an issue previously determined on its merits, it may be applied *in favor of* a stranger to the first action,

but only *against* a party to that action." 487 F.2d at 671. (Emphasis in original)

*See also General Foods v. Massachusetts Department of Public Health*, 648 F.2d 784 (1st Cir.1981); *Gerrard v. Larsen*, 517 F.2d 1127 (8th Cir.1975); *Standage Ventures, Inc. v. State*, 114 Ariz. 480, 562 P.2d 360 (1977); *Gomes v. Tyau*, 57 Haw. 163, 552 P.2d 640 (1976); *Hunter v. City of Des Moines, supra*.

The attempt to assert a judgment against a person who is not a party to the original action can be done if such person is in privity with a party to the earlier litigation. In *Southwest Airlines Co. v. Texas International Airlines*, 546 F.2d 84, 95 (5th Cir.1977), *cert. denied*, 434 U.S. 832, 98 S.Ct. 117, 54 L.Ed.2d 93, the following categories of privity were identified:

"Federal courts have deemed several types of relationships 'sufficiently close' to justify preclusion. First, a non-party who has succeeded to a party's interest in property is bound by any prior judgments against the party.... Second, a non-party who controlled the original suit will be bound by the resulting judgment.... Third, federal courts will bind a non-party whose interests were represented adequately by a party in the original suit." (Citations and footnote omitted)

However, this is by no means an exhaustive itemization of what constitutes a "privy" status which may result in an earlier judgment binding a non-party to it.[15]

Cases as well as the Restatement demonstrate that the privity doctrine does not apply when a person sues in a representative capacity, and then brings his own individual cause of action even though it arises from the same transaction. This is summarized in Paragraph 2 of Section 36 of the Restatement (Second) of Judgments (1982):

15. The Restatement (Second) of Judgments, *Introduction* p. 1 (1982), refers to the concept of privity as follows:
"The concept of 'privity' refers to a cluster of relationships, see §§ 34 to 61, under which

the preclusive effects of a judgment extend beyond a party to the original action and apply to persons having specified relationships to that party, for example, the relationship of successor in interest."

"A party appearing in an action in one capacity, individual or representative, is not thereby bound by or entitled to the benefits of the rules of res judicata in a subsequent action in which he appears in another capacity."[16]

*See Humphrey v. Tann, supra; Gerrard v. Larsen, supra; Hossler v. Barry, supra; Rudow v. Fogel,* 376 Mass. 587, 382 N.E.2d 1046 (1978); *In re Sullivan's Estate,* 289 N.Y.2d 44, 323 N.Y.S.2d 817, 272 N.E.2d 323 (1971); *Farley v. Farley,* 19 Utah 2d 301, 431 P.2d 133 (1967).

Thus, it is clear that petitioners are not foreclosed under any privity concepts from pursuing their own claim against the defendants because they had earlier acted as *guardian ad litems* in their daughter's personal injury claim.

The fact that the privity issue may depend on factual matters that are independent of anything contained in the original proceeding is another reason why the trial court is in a better position to resolve these issues than we are by way of an original prohibition proceeding.

Finally, it must be emphasized that by declining to supervise through prohibition matters relating to collateral estoppel we are not creating any inequitable rule. Trial courts are undoubtedly as sensitive as we are to the need to preclude repetitive and vexatious litigation. Where the right to collateral estoppel is clear, it will undoubtedly be enforced. In a close case, the trial court may well decline to enforce collateral estoppel but such declination means only that the party seeking collateral estoppel must litigate the issue which is what would have to be done if there were no earlier proceeding.

A summary of the principles of collateral estoppel applicable to the present case include:

(1) The petitioners in this case are not foreclosed from asserting collateral estoppel as against the Gas Company and the City of Weirton since the doctrine of mutuality of parties is no longer an absolute bar for collateral estoppel in this jurisdiction. Both the Gas Company and the City of Weirton were parties in the original case of *Long v. City of Weirton* and had an opportunity to litigate the issues which gave rise to the petitioners' cause of action.

(a) Collateral estoppel, however, may be denied if the petitioners could have easily consolidated their suit with the original suit or if there are different defenses that can be legitimately raised by the Gas Company and the City of Weirton in the present suit which could not have been raised in the original suit.

(2) The petitioners are not foreclosed under concepts of privity from pursuing their present claim because they acted as *guardian ad litems* in the case of *Long v. City of Weirton* on the cause of action of their injured daughter.

(3) The defendant intervenors, Tri-State Asphalt Corporation and James White Construction Company, cannot assert collateral estoppel against the petitioners based on their exoneration in the original suit because the petitioners were not parties nor in privity with the plaintiff in the original case. Due process requirements prohibit foreclosure of a plaintiff's claim where such plaintiff has not had an opportunity to litigate it in the prior proceeding.

The writ of prohibition is denied because the enforcement of collateral estoppel rests upon factual and legal issues which are ordinarily left to the discretion of the trial court and which are unsuitable for resolution on an original writ of prohibition in this Court. In refusing to issue this writ of prohibition, we do not foreclose the trial court from reconsidering these matters in light of the principles set out in this opinion.

Writ Denied.

**16.** This precept is illustrated in the following example given under Section 36:

"In a collision between cars driven by A and B, A is injured, B is killed, and C, who is B's wife, is also injured. A brings an action for his injuries against C as administratrix of B's estate. Judgment is for A. If C subsequently sues for her own injuries, she is not precluded from relitigating the issues determined in the first action."