330 S.E.2d 840

**James E. PITSENBARGER, and Ronald R. Potesta, as Director of the Department of Natural Resources**

**v.**

**Glen B. GAINER, Jr., State Auditor.**

**No. 16223.**

Supreme Court of Appeals of West Virginia.

Submitted April 23, 1985.

Decided June 3, 1985.

**32**

Ricklin Brown, Bowles, McDavid, Graff & Love, Charleston, John E. Busch, Brown, Harner & Busch, Elkins, for petitioner.

Silas B. Taylor, Asst. Atty. Gen., Charleston, for respondent.

McGRAW, Justice:

Petitioners James E. Pitsenbarger and Ronald R. Potesta, as Director of the Department of Natural Resources, seek a writ of mandamus compelling payment by respondent State Auditor Glen B. Gainer, Jr., of legal fees and expenses incurred in Pitsenbarger's successful defense of a felony charge alleging embezzlement of state property in connection with his employment with the Department. This attempt follows the rejection of Pitsenbarger's similar effort seeking indemnification from the Randolph County Commission or Prosecuting Attorney by the trial judge, who determined that Pitsenbarger had failed to demonstrate that he had acted in good faith, a prerequisite to the recovery of legal fees and expenses by public officials under Syllabus Point 3 of *Powers v. Goodwin,* 170 W.Va. 151, 291 S.E.2d 466 (1982), which provides that:

> The rules governing whether a public official is entitled to indemnification for attorneys' fees are the same in both the civil and criminal context. In order to justify indemnification from public funds the underlying action must arise from the discharge of an official duty in which the government has an interest; the officer must have acted in good faith; and the agency seeking to indemnify the officer must have either the express or implied power to do so.

*See also Goe v. Browning,* 170 W.Va. 698, 296 S.E.2d 45, 46–47 (1982); *Martin v. Mullins,* 170 W.Va. 358, 294 S.E.2d 161, 165 (1982). Therefore, following a brief discussion of the circumstances involved, we will address the issue the application of the doctrine of collateral estoppel, which clearly precludes this action.

On November 12, 1982, Pitsenbarger and two fellow employees, Raymond L. Pingley and Jerry Hoover, were charged by the Randolph County Grand Jury with "unlawfully and feloniously taking and misappropriating State property, by converting it to cash and converting it to their own person-

al use."[1]  Specifically, Pitsenbarger, Chief of the Reclamation Division of the Department of Natural Resources, was charged with causing state property and personnel to be used in the repair of his personal vehicles.[2]  Pingley, who subsequently testified on behalf of the prosecution, entered a guilty plea to the indictment, while Hoover plead guilty to an unrelated misdemeanor petit larceny charge followed by *nolle prosequi* of the felony indictment.  Therefore, Pitsenbarger was the only one of the three to go to trial.  On July 15, 1983, following a three day trial, the jury returned a verdict of not guilty after adding the phrase "based on the lack of State evidence" to the verdict form.  Thereafter, in a curious twist, both Pingley and Hoover were strangely permitted to withdraw their guilty pleas by the circuit court which then let them off by dismissing all charges against them.

On August 16, 1983, Pitsenbarger filed a petition for the payment by the Randolph County Commission or Prosecuting Attorney of legal fees and expenses incurred in his defense based upon this Court's holding in *Powers v. Goodwin*.  Following a hearing on this petition, however, the trial court refused to award counsel fees and expenses in an order dated October 31, 1983, stating that "the jury verdict does not convince the Court that the Defendant acted in good faith, and the Court finds that the Petitioners have not met the standard set

forth in *Powers v. Goodwin* by proving the Defendant acted in good faith."[3]

Perhaps anticipating defeat on this petition, Pitsenbarger began to wage his battle for legal fees and costs on a different front, filing a request for indemnification with the Department of Natural Resources on September 7, 1983.  As a result, David C. Callaghan, then Director of the Department, sought advice from the Attorney General with respect to the legality of this request.  The Attorney General's succinct reply was that, "[I]n its numbered conclusions of law the Court has effectively adjudicated the issue of entitlement based on the criteria set forth in *Powers v. Goodwin*.  Whether these conclusions are right or wrong, the Attorney General's office has no authority to differ with or disregard them."

On February 14, 1984, rejecting the Attorney General's advice, Pitsenbarger petitioned this Court for writ of mandamus compelling indemnification by the Department of Natural Resources.  This petition was denied on March 7, 1984.  Undaunted, Willis H. Hertig, Jr., then Director of the Department, again requested approval by the Attorney General of his decision to indemnify Pitsenbarger.  After failing to receive a response, Hertig submitted a formal requisition for Pitsenbarger's legal fees and expenses totalling $61,527.11 to the State Auditor.  After being referred by

---

**1.**  West Virginia Code § 61–3–20 (1984 Replacement Vol.), the statute which formed the basis for Pitsenbarger's indictment, provides, in relevant part, that:

> If any officer, agent, clerk or servant of this State ... embezzle or fraudulently convert to his own use ... money ... or any effects or property ... which shall come into his possession, or been placed under his care or management, by virtue of his office, place or employment, he shall be guilty of the larceny thereof.

**2.**  In addition to this allegation, evidence was also presented at Pitsenbarger's trial to demonstrate that he authorized and participated in invoice splitting; appropriated other state property for his personal use; and, permitted employees under his supervision to commit other wrongful acts.

**3.**  The trial court's order refusing the request for indemnification incorporated by reference find-

ings of fact and conclusions of law made at the conclusion of oral arguments on this request.  The trial court stated at this hearing that:

> I have some real concern about whether he was acting in, doing an act which arises from the discharge of an official duty in which the government has an interest.  I find that based on the facts that I know them to be that it's very, he certainly set out to have his vehicles fixed by people he knew to be State employees some distance from his residency and where he does his official acts by as I say people he knew to be officials, be employees of the State of West Virginia, although the testimony and the best testimony presented was that he, as recognized by the jury's verdict, that he attempted to get these individuals to not expend State property and also not to do it on State time and when they were employed....

the Attorney General to his previous advice with respect to this issue, the State Auditor refused payment. A petition for writ of mandamus was then brought in this Court, raising the issue of the effect of the doctrine of collateral estoppel on this attempt to relitigate the issue of Pitsenbarger's compliance with the criteria for indemnification set forth in *Powers v. Goodwin.*

In Syllabus Point 2 of *Conley v. Spillers,* 171 W.Va. 584, 301 S.E.2d 216 (1983), this Court noted that, "Collateral estoppel is designed to foreclose relitigation of issues in a second suit which have actually been litigated in the earlier suit even though there may be a difference in the cause of action between the parties of the first and second suit." As noted by the United States Supreme Court in *Montana v. United States,* 440 U.S. 147, 153–54, 99 S.Ct. 970, 973–74, 59 L.Ed.2d 210, 217 (1979):

To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions. [Footnote omitted].

The effect of the doctrine of collateral estoppel has gradually expanded beyond the realm of the immediate parties and their privies. After noting that "[t]he underlying premise for requiring mutuality of parties was that it would be unfair for the party seeking the advantage of the judgment not to be bound by it," this Court recognized in *Conley v. Spillers,* 171 W.Va. at 589, 301 S.E.2d at 221, that "[t]his premise . . . failed to take into account that the party who is bound to the judgment has had an opportunity to fully litigate his position in the first suit as to the same issue being asserted in the second suit." Therefore, in Syllabus Point 5 of *Conley v. Spillers,* this Court held that, "In this jurisdiction under certain conditions mutuality of parties is no longer necessary in order to enforce a judgment against a party or his privy."

■ Several factors must be taken into account in analyzing the assertion of collateral estoppel by a party not privy to the initial action upon which the assertion is based. In Syllabus Point 6 of *Conley v. Spillers,* this Court stated that:

Whether a stranger to the first action can assert collateral estoppel in the second action depends on several general inquiries: Whether the issues presented in the present case are the same as presented in the earlier case; whether the controlling facts or legal principles have changed substantially since the earlier case; and, whether there are special circumstances that would warrant the conclusion that enforcement of the judgment would be unfair.

■ With respect to the first factor, Pitsenbarger maintains that the issues raised in this proceeding are not the same as those presented in the earlier action due to the Department of Natural Resources' subsequent election to indemnify him, which he alleges entitles him to the benefit of a presumption recognized in Syllabus Point 4 of *Powers v. Goodwin,* that "[w]here a neutral public body elects to indemnify one of its employees . . . for attorneys' fees incurred as a result of [his or her] official duties there is a presumption that such indemnification was made in good faith. . . ." We note, however, that this presumption evaporates when there has been a judicial determination that the public employee does not meet the legal criteria for indemnification. For example, in *Powers v. Goodwin,* 170 W.Va. at 159, 291 S.E.2d at 474, we recognized that, "conviction of a common law or statutory crime is conclusive proof that the official was not acting in good faith and was outside the scope of his official duties." Certainly, once a public official or employee has been convicted, an election to indemnify from public funds would be improper. We further noted in *Powers v. Goodwin,* 170 W.Va. at 159, 291 S.E.2d at 474, that, "exoneration either by a preliminary dismissal or a verdict of not guilty in an ordinary criminal prosecution is not necessarily conclusive proof that the official acted in good faith and was within the scope of his official duties." In the present case, the trial

 

court determined that despite the verdict of not guilty, he remained unconvinced of Pitsenbarger's good faith.[4] As recognized by the Attorney General, the Department of Natural Resources could not, after this judicial determination that Pitsenbarger did not meet the relevant legal criteria, elect to indemnify him.

Unquestionably, the issues raised in the instant proceeding and in Pitsenbarger's petition for indemnification before the Circuit Court of Randolph County are identical. Pitsenbarger's attempt at both the trial and appellate levels to secure indemnification for legal fees and expenses incurred in his defense is based solely upon Syllabus Point 3 of *Powers v. Goodwin.* Furthermore, the circumstances involved and the legal standard for indemnification have remained unchanged since the trial court's initial determination. Finally, there are no special circumstances that warrant the conclusion that application of the doctrine of collateral estoppel would be unfair. Pitsenbarger was afforded an opportunity and had the incentive for a full and fair adjudication of the indemnification issue below, and chose not to appeal the trial court's adverse determination. We note the trial court's distinct advantage in addressing the issue of "good faith" given its participation in the reception of evidence at Pitsenbarger's trial. In contrast, this Court lacks the full transcript of the proceedings below.

Adequate procedural safeguards were set forth in *Powers v. Goodwin* to protect public officials and employees from needlessly incurring excessive attorney fees and other expenses in defending their official actions. We noted that, "In questionable cases it is possible to get an advance determination of the legality of indemnification through an Attorney General's opinion or a mandamus proceeding...." 170 W.Va. at 159–160, 291 S.E.2d at 475. Unfortunately, Pitsenbarger chose to ignore this route prior to trial in favor of seeking indemnification first from the Randolph County Com-

mission and Prosecuting Attorney, and then from the Department of Natural Resources, after his acquittal. Consequently, he is left to bear the burden of legal fees and expenses incurred in his defense.

For the foregoing reasons, the petition for a writ of mandamus is hereby denied.

Writ denied.

---

**4.** We also note the trial court's reluctance at the indemnification hearing to find that requesting state employees to perform repair work on Pitsenbarger's personal vehicles was an action arising from the discharge of an official duty in which the government has an interest, the second criterion for indemnification under *Power v. Goodwin. See supra* note 3.