429 S.E.2d 504

**Mildred WALDEN, Plaintiff Below, Appellant,**

v.

**Jay M. HOKE and Fredrick G. Staker, III, Defendants Below, Appellees.**

No. 21277.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 13, 1993.

Decided April 23, 1993.

Richard A. Robb, Charleston, for appellant.

Stephen R. Crislip, Pamela L. Wray, Jackson & Kelly, Charleston, for appellees.

BROTHERTON, Justice:

This case involves a petition for appeal by Mildred Walden from the May 6, 1992, summary judgment order of the Circuit Court of Cabell County. She seeks damages from attorneys Jay Hoke and Fredrick Staker, III, for professional negligence, negligent conflict of interest, breach of fiduciary duties, and breach of contract.

On August 1, 1989, Mildred Walden retained Jay Hoke, an associate in the law office of Hankins & Taylor, to represent her in her divorce from her husband, Dan Edwin Walden. Another associate in the Hankins & Taylor office, Fredrick Staker, also participated in her representation by the law firm. Mrs. Walden alleges that Hoke and Staker also represented her husband's interests in the divorce proceedings.

The Waldens had been married for fourteen years. During that time, Mr. Walden became disabled due to workers' compensation injuries and a bipolar psychiatric illness that rendered him incompetent. Mrs. Walden contends that she took care of her husband and all of his affairs during their marriage because of his disabilities. Mrs. Walden served as her husband's legal committee during their marriage, until she resigned on July 5, 1990. At that point, Mr. Walden's daughter, Bobbi Jo Walden, was appointed to replace her. In her deposition, Mrs. Walden noted that in her capacity as his committee, she handled all aspects of her husband's disability claims and workers' compensation claims. She also stated that she participated in all conferences with her husband's workers' compen-

sation attorney, Amos Wilson, and that she was involved in the progress of the cases.

During the pendency of the divorce action, but prior to a final decree, Mr. Walden received two workers' compensation awards, first $55,000, and then $30,000 several months later. Mrs. Walden claims that upon receipt of the $55,000 award, her husband immediately began spending the money and that her request to her lawyers to freeze the assets were ignored until she froze them herself. At that point, approximately $13,000 remained. No evidence was presented in support of these allegations, nor were any dates given regarding the release dates of the workers' compensation payments.[1]

On July 20, 1990, after she resigned as committee, Mrs. Walden signed a formal separation and property settlement. On August 21, 1990, a guardian ad litem was appointed for Mr. Walden because he was declared incompetent. On October 18, 1990, a final divorce hearing was held before the Lincoln County family law master. The Lincoln County Circuit Court entered a final divorce decree on that same date, and the property settlement agreement was approved.[2] The property settlement stated, in pertinent part, that:

4. That in consideration for which, the Husband and Wife shall receive the monies set forth as follows:

a. The Wife shall receive Twelve Thousand Dollars ($12,000.00) as a lump sum cash settlement, with Two Thousand Dollars ($2,000.00) of which having been previously paid, and with Ten Thousand Dollars ($10,000.00) of which to be conveyed at the execution of this *Agreement* by both of the parties hereto; and,

b. The Husband shall receive the rest and residue of his State Workers Com-

pensation settlement from this date hereafter; and,

c. The Husband's Committee, Mrs. Bobbi Jo Walden, has been expressly advised of this provision and does hereby give her express CONSENT AND AGREEMENT to this cash settlement and its effect; and,

\*   \*   \*   \*   \*   \*

That both the Husband and Wife, together with the Husband's Committee, further expressly acknowledge and agree that the above mutual covenants and agreed-upon terms are fair and reasonable; were not obtained by fraud, duress or any other unconscionable act or conduct by either of the parties; and, represent an equitable distribution of the marital estate by and between the parties hereto.

In December, 1990, after the divorce decree was final, Mrs. Walden learned that her ex-husband had received a second workers' compensation award of approximately $30,000. Again, the date of this payment is unclear. Mrs. Walden alleges that her ex-husband, his daughter (the new committee), and her attorney, Mr. Hoke, concealed this award from her.[3]

Within the appeal time for the divorce decree, Mrs. Walden retained attorney Ray Hampton to attempt to set aside the final divorce decree and property settlement. Thus, on February 7, 1991, she filed a Rule 60(b) motion, arguing that the property settlement agreement and the final divorce decree were obtained by fraud, duress, and unconscionable conduct.

On March 4, 1991, a hearing and oral argument was held in Lincoln County Circuit Court. On March 21, 1991, the court ruled that the appellant:

1. In his deposition, Mr. Hoke stated that his work for Mrs. Walden was pro bono, although Mrs. Walden contends she paid $100 in cash.

2. In her deposition, Mrs. Walden stated that she agreed to the $12,000 lump sum cash award in that property settlement because that was all that she believed was left of the workers' compensation awards and that she was under stress at the time she agreed to enter the settlement agreement. She specifically stated, however,

that her lawyers did not force or coerce her into entering the property settlement.

3. In the October 18, 1990, hearing before the family law master, Mrs. Walden advised the court that "We still live together, we still do business together, whatever." In her deposition, she stated that she continued to handle his affairs even after she was no longer his committee.

knew of the existence of the Worker's Compensation award made to the Respondent herein. And did knowingly and intelligently waive her rights thereto as demonstrated by her execution of the Settlement Agreement which reads in part in paragraph 4B, that the husband shall receive the rest and residue of the State Worker's Compensation settlement from this date hereafter; and that the agreement was signed by the Petitioner on July 20th, 1990, and the Petitioner received the portion of the Worker's Compensation funds which the Petitioner seeks a portion thereof; after July 20th, 1990. And that the Petitioner entered into this Settlement Agreement without her being subjected to any fraud, duress or other unlawful means.[4]

Rather than filing an appeal, Mrs. Walden filed suit against Hoke and Staker for legal malpractice in Cabell County on April 30, 1991. The malpractice suit was filed within the appeal period for the Lincoln County Rule 60(b) action. In the malpractice claim, Mrs. Walden asserted that her attorneys had a conflict of interest, that she did not understand the settlement agreement, that she was under duress throughout the divorce, and that she did not know of the second workers' compensation award to her husband. The appellant characterizes this issue as professional negligence, breach of fiduciary duties, and lack of informed consent. Following a one-year discovery period, the appellees moved for summary judgment on the issue of collateral estoppel.

By order filed May 6, 1992, the Cabell County Circuit Court granted the appellees' motion for summary judgment following a hearing and oral argument. The court ruled that Mrs. Walden was collaterally estopped from bringing a second action based upon issues which had been fully adjudicated in the Lincoln County Circuit Court action. Specifically, the court stated:

Sealed exhibits from the Lincoln County Circuit Court divorce action, filed in support of the Motion for Summary Judgment by the defendants, reveal that a final divorce decree with the Separation and Property Settlement Agreement approved and attached was entered by Judge W. Jack Stevens on October 18, 1990; that plaintiff, by different counsel than the defendants, filed a motion in Lincoln County to set aside the Final Divorce Decree and Separation and Property Agreement on or about February 7, 1991 based upon the same or similar grounds asserted herein; that a hearing was held on March 4, 1991 on said motion before Judge E. Lee Schlaegel, Jr. at which the plaintiff and her counsel personally appeared; and that by Order dated March 20, 1991, Judge Schlaegel expressly ruled:

"[1.] That the Petitioner herein knew of the existence of the Workers' Compensation award to be prospectively made to the Respondent herein, and did knowingly and intelligently waive her rights thereto as demonstrated by her execution of the Settlement Agreement ..."

. . . .

and that "... the Settlement Agreement of the parties was entered into by the Petitioner (the plaintiff herein) without her being subjected to fraud, duress, or other unlawful compulsions to enter into said Agreement."

That no further Motion to Reconsider was made and no appeal of the Lincoln County divorce action was made before or after this action was filed in this Court on or about April 30, 1991.

5. Based upon the exhibits of all parties herein, and the entire record before it, taken in a light most favorable to the plaintiff, the Court accordingly finds that the plaintiff herein is barred by the doctrine of collateral estoppel from relitigating these same or similar issues in the Circuit Court of Cabell County against

---

**4.** The appellee Hoke notes that Mrs. Walden declined a later offer by their representative to file a motion to reconsider after the Lincoln County Circuit Court had refused the motion to set aside the property agreement. Thus, there was no appeal filed to either the final divorce decree or the denial of the motion to set aside.

the defendants, as a matter of law. For these and other reasons apparent on the face of the record, the Court ORDERS that the Motion for Summary Judgment be, and the same hereby is, granted as a matter of law and the Clerk is directed to remove this action from the docket of this Court.

Unfortunately, those sealed records cannot be located. This action is Mrs. Walden's appeal from that final order.

■ In *Conley v. Spillers*, 171 W.Va. 584, 588, 301 S.E.2d 216, 220 (1983), this Court discussed the differences between res judicata and collateral estoppel:

'To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions'.... Collateral estoppel is designed to foreclose relitigation of issues in a second suit which have actually been litigated in the earlier suit even though there may be a difference in the cause of action between the parties of the first and second suit.

*Id.,* at 588, 301 S.E.2d at 220 (citations omitted). The Court also recognized that mutuality of parties, under certain conditions, was no longer required. "In this jurisdiction under certain conditions mutuality of parties is no longer necessary in order to enforce a judgment against a party or his privy." *Id.* at syl. pt. 5.

■ Thus, the principles of collateral estoppel do not require that the parties in the separate suits be identical, as in res judicata. However,

[w]hether a stranger to the first action can assert collateral estoppel in the second action depends on several general inquiries: Whether the issues presented in the present case are the same as presented in the earlier case; whether the controlling facts or legal principles have changed substantially since the earlier case; and, whether there are special circumstances that would warrant the conclusion that enforcement of the judgment would be unfair.

*Id.* at syl. pt. 6. *See also Pitsenbarger v. Gainer*, 175 W.Va. 31, 33, 330 S.E.2d 840, 843 (1985). In this case, there are no controlling facts or legal principles that have changed substantially. There is, however, a question of whether the issues presented in Cabell County are the same as those decided by the Lincoln County Circuit Court.

■ In the case now before us, Mrs. Walden's allegations must be analyzed separately. There is no question that the third and fourth allegations in Mrs. Walden's malpractice complaint, the issues of duress and lack of knowledge of the workers' compensation award, were addressed by the Lincoln County Circuit Court. The Lincoln County order which dismissed Mrs. Walden's Rule 60(b) motion specifically found that the property settlement was not obtained through duress and that Mrs. Walden was aware of the prospective workers' compensation award. Consequently, the circuit court was correct in foreclosing any further attempt to litigate the issues of whether Mrs. Walden knew of the possibility of future workers' compensation awards and if the agreement was obtained through fraud or duress.

■ Turning to the appellant's second allegation, we find that Mrs. Walden's argument that she did not understand the property settlement agreement was also properly dismissed. Although as worded, the appellant's allegation that she did not understand the property settlement agreement appears to be a new claim, a careful analysis reveals it also revolves around the workers' compensation awards. The only portion of the property settlement agreement that she complains not to understand is her failure to be granted more of the workers' compensation award—there is no complaint regarding the division of their personal property, automobiles, trailer, or bills.

The appellees direct this Court's attention to *McCord v. Bailey*, 636 F.2d 606 (D.C.Cir.1980), *cert. denied* 451 U.S. 983, 101 S.Ct. 2314, 68 L.Ed.2d. 839 (1981), in

which a plaintiff filed a malpractice action against his attorneys following the denial of an appeal of a criminal conviction on the grounds that he had received ineffective assistance of counsel. The federal district court held that the plaintiff was collaterally estopped from asserting a malpractice claim against his attorneys because he had a full and fair opportunity to litigate the issue in the first claim. The court ruled that:

> [The plaintiff's] allegations in this case encompass in all material respects the same claims he presented in his *coram nobis* petition and his criminal conviction appeal. These claims center on ineffective assistance and intentional betrayal. Though in his civil case he couches his claims primarily in tort, he raises no new material contentions.

*Id.* at 609.

■ A similar situation exists in this case. A litigant cannot relitigate, in a different jurisdiction, an issue previously ruled upon by another court merely by describing the same facts in a different way. Mrs. Walden's allegations boil down to one basic complaint—she did not get part of a workers' compensation award which she believed she deserved. The Lincoln County Circuit Court found that she understood the property settlement and that she knowingly waived her rights to that workers' compensation award without fraud or duress. Thus, the Cabell County Circuit Court correctly dismissed this allegation.

■ The last allegation of a conflict of interest on the part of Mrs. Walden's lawyers is perhaps more difficult to analyze.

Despite the current litigation, this divorce was initially uncontested and involved an incompetent who had a guardian ad litem and committee to look after his interests. The only evidence in the record of a possible conflict of interest is the appellees' preparation of an answer to Mrs. Walden's divorce petition for Mr. Walden, his committee, and guardian ad litem. While the preparation of documents for a guardian ad litem by the other party's attorney is common practice and generally innocuous, we believe it is improper.

■ An opinion, filed by the Committee on Legal Ethics in 1977, discussed this issue and concluded that it is improper for a lawyer to represent both the husband and the wife at any stage of the separation and divorce proceeding, even with full disclosure and informed consent. The likelihood of prejudice is so great with dual representation so as to make adequate representation of both spouses impossible, even where the separation is "friendly" and the divorce uncontested. The provisions of W.Va.Code § 48–2–4(a)(10) (1992), which allow a divorce for irreconcilable differences, do not alter the impropriety of dual representation. Legal Ethics Opinion 77–7. We agree.[5] More specifically, we hold that a plaintiff's lawyer should not prepare an answer for the defendant in any divorce, regardless of whether the divorce is uncontested and simple.

■ Unlike the situation in the Legal Ethics opinion, Hoke and Staker did not agree to represent Mr. Walden as well as Mrs. Walden. However, by preparing documents for the defendant, the appellees

---

5. West Virginia Code § 48–2–4(a)(10) (1992) states:

> If one party to a marriage shall file a verified complaint, for divorce, against the other, alleging that irreconcilable differences have arisen between the parties, and stating the names of the dependent children of the parties or of either of them, and if the other party shall file a verified answer to the complaint and admit or aver that irreconcilable differences exist between the parties, the court shall grant a divorce: Provided, That the defendant may file and serve an answer with or without an attorney, and said verified answer shall be sufficient if it is of the form as set out in

> section four-a [§ 48–2–4a] of this article: Provided, however, That the circuit clerk of each county shall maintain sufficient supplies of said form and provide the same to any person at no charge. No corroboration shall be required on the ground for the divorce or the issues of jurisdiction or venue or any other proof for a divorce on the ground of irreconcilable differences of the parties. The court may make orders for or approve, modify or reject any agreement between the parties pertaining to just and equitable, (i) alimony, (ii) custody, support or maintenance of children, or (iii) visitation rights.

created an inference of impropriety. While the practice of one party preparing documents for the guardian ad litem of an opposing party may be common, we believe it is unwise. Regardless of how simple, amicable, and uncontested the divorce may be, the preparation of documents for the opposing party raises the possibility of prejudice and presents the appearance of impropriety.

The situation at hand is good illustration of why the rule stated above is wise. This divorce, which began uncontested and amicable, degenerated rapidly into a case engendering multiple litigation. While separate attorneys for both parties would not guarantee that this appeal would not have occurred, it would go a long way towards avoiding allegations of conflict of interest.

■ Consequently, in the case now before us, we find that it was improper for the appellees to prepare documents for Mr. Walden, his guardian ad litem, and committee. The guardian ad litem is fully capable of preparing documents on behalf of an incompetent or minor, thus avoiding any appearance of impropriety. At the same time, however, we can find no evidence that in preparing that document, Hoke and Staker prejudiced Mrs. Walden's interests. The answers prepared for Mr. Walden simply admitted what Mrs. Walden had alleged in her divorce petition, agreed that they had irreconcilable differences, and stated that the property settlement had been agreed on by all parties. Since no evidence was presented showing that the appellees' preparation of the answer prejudiced the appellant, we hold the action harmless.[6]

Accordingly, we affirm the May 6, 1992, order of the Circuit Court of Cabell County and hold that the appellant's suit was properly dismissed by summary judgment.

Affirmed.

WORKMAN, Chief Justice, dissenting:

The majority concludes that collateral estoppel bars relitigation, in a different jurisdiction, of an issue previously ruled upon by another court. As the majority recognizes, a party cannot circumvent that rule by simply describing the same facts in a different way. While those principles are facially correct, they do not adequately address or resolve the issues presented to this Court in the instant case.

The majority summarily concludes that Mrs. Walden's allegations "boil down to one basic complaint—she did not get part of a workers' compensation award which she believed she deserved." Upon thorough analysis of Mrs. Walden's claims in the legal malpractice action, however, it is clear that additional issues were raised in the Cabell County claim which had not been litigated in Lincoln County. The Circuit Court of Lincoln County did indeed find that Mrs. Walden knew of the existence of the workers' compensation award and knowingly and intelligently waived her rights thereto. That issue was the only one determined by the Circuit Court of Lincoln County.[1]

In the legal malpractice action brought in Cabell County, however, Mrs. Walden clearly raised issues not previously addressed by the Lincoln County court. For

---

**6.** When considered from a practical standpoint, the conflict of interest allegation also revolves around the workers' compensation award. Assuming it is true, then Mrs. Walden's attorneys also represented Mr. Walden in the property settlement. The only thing of value in the settlement was, incidentally, the workers' compensation award. Mrs. Walden testified that she handled all of Mr. Walden's workers' compensation affairs, and the Lincoln County Circuit Court ruled that she "knowingly and intelligently waived her rights" to that award. If she knowingly waived her rights to the only item of any value, how could she have been harmed by a perfunctory answer to facilitate the conclusion of the divorce proceedings? As we noted

above, the answer simply confirmed what Mrs. Walden had asked for—a divorce—and the approval of the previously agreed to property settlement agreement.

**1.** It is actually not clear from the record before us whether the circuit court completely resolved even the issue regarding the workers compensation award. It concluded that "... the Settlement Agreement of the parties was entered into by the Petitioner without her being subjected to fraud, duress, or other unlawful compulsions to enter said Agreement." This appears to leave open the question of whether the Petitioner waived her interest in the award based on negligent legal advice.

instance, Mrs. Walden claimed that her attorneys were negligent in protecting her interests by failing to prevent her former husband's dissipation of approximately $40,000 in marital assets. Further, Mrs. Walden claimed that her attorneys neglected to advise her of a possible right to alimony and failed to assert her claim to any real property interest. Mrs. Walden also asserted that her attorneys failed to conduct meaningful discovery. A finding in the Lincoln County action that Mrs. Walden knew of the workers' compensation award and knowingly and intelligently waived her rights thereto should not preclude litigation in Cabell County of issues which were not encompassed within the scope of the Lincoln County inquiry. Mrs. Walden's claim against her attorneys for legal malpractice should have been allowed to proceed, so that she could have had her day in court to fully litigate the issues in her complaint.

We have said on many occasions that a motion for summary judgment should be granted only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. W.Va.R.Civ.P. 56(c). We have explained that on appeal, the facts are to be viewed in a light most favorable to the party against whom the summary judgment was rendered. *Price v. Bennett*, 171 W.Va. 12, 297 S.E.2d 211 (1982). We have also emphasized that because summary judgment forecloses trial on the merits, we have not favored its use where factual development is necessary to clarify application of the law. *Coffman v. Shafer*, 186 W.Va. 381, 412 S.E.2d 782 (1991). Furthermore, questions of negligence and due care are not ordinarily susceptible to adjudication through summary judgment. *Reed v. Smith Lumber Co.*, 165 W.Va. 415, 268 S.E.2d 70 (1980).

It smacks of lawyer protectionism to deny this plaintiff at minimum the right to develop the facts surrounding her claims which were not addressed in any way by the Lincoln County Circuit Court.