517 S.E.2d 300

**Stanley Gene MITCHELL, Plaintiff Below, Appellee,**

v.

**Anne Marie MITCHELL, Defendant Below, Appellant.**

**No. 25421.**

Supreme Court of Appeals of West Virginia.

Submitted June 1, 1999.

Decided June 18, 1999.

Timothy P. Lupardus, Pineville, West Virginia, Attorney for Appellant.

Stanley Gene Mitchell, Pro Se.

PER CURIAM:

This appeal was filed by defendant below and appellant herein, Anne Marie Mitchell, (hereinafter referred to as "Mrs. Mitchell"), from a divorce decree entered by the Circuit Court of Wyoming County. Mrs. Mitchell assigns the following as error: (1) the failure of the circuit court to require financial disclosure statements; (2) the distribution of marital property; (3) the amount of child support awarded; (4) child custody; (5) alimony; and (6) impropriety by plaintiff's counsel. Upon a review of the arguments, the record presented on appeal, and the pertinent authorities, we reverse this case and remand it to the Circuit Court of Wyoming County for further review consistent with this opinion.

## I.

## FACTUAL AND PROCEDURAL HISTORY

Mrs. Mitchell and the plaintiff below, appellee herein, Stanley Gene Mitchell, (hereinafter referred to as "Mr. Mitchell"), were married on September 6, 1987. Two children were born from the marriage.[1] It appears that Mr. Mitchell was employed as a miner throughout the marriage. Mrs. Mitchell was a homemaker and was not employed outside the home.

In January 1998, Mr. Mitchell filed for divorce on the grounds of irreconcilable differences. Mr. Mitchell was represented by counsel. Mrs. Mitchell filed an answer to the complaint admitting irreconcilable differences. Initially, Mrs. Mitchell was not represented by counsel.[2] Counsel for Mr. Mitchell drafted a separation agreement. Both parties signed the separation agreement. Relevant aspects of the separation agreement provided for the division of marital property, and assigned marital debts to Mr. Mitchell. Additionally, the separation agreement provided for custody of the oldest child to be awarded to Mr. Mitchell, and custody of the youngest child to be awarded to Mrs. Mitchell. The separation agreement also provided that neither party would receive alimony.

A final hearing was held before the family law master on March 4, 1998. Mrs. Mitchell was at the courthouse for the final hearing. However, Mrs. Mitchell left before the hearing began.[3] Mr. Mitchell and his counsel attended the final hearing. The family law master accepted the separation agreement and filed a recommended decision which granted the parties a divorce on the grounds of irreconcilable differences.

Mrs. Mitchell retained counsel at some point after the final hearing. Counsel for Mrs. Mitchell filed exceptions to the family law master's recommended decision. On April 29, 1998, the circuit court adopted the family law master's recommendation. The final divorce order granted the parties a divorce on the grounds of irreconcilable differences. The order awarded custody of the oldest child to Mr. Mitchell, and awarded custody of the youngest child to Mrs. Mitchell.[4] Neither party was awarded alimony pursuant to the terms set forth in the separation agreement. Mr. Mitchell was ordered to pay child support to Mrs. Mitchell in the

---

1. The oldest child was nine years of age and the youngest child was one year of age. At the time of the divorce, Mrs. Mitchell was pregnant with a third child.

2. Mrs. Mitchell retained counsel after the family law master filed the recommended decision in the case. Counsel for Mr. Mitchell withdrew

representation after filing an appeal brief in this case on behalf of Mr. Mitchell.

3. Mrs. Mitchell indicates in her petition that Mr. Mitchell told her to leave the courthouse.

4. The order set out visitation for each party with the child not in his or her custody.

amount of $400.00 per month.[5] The order adopted, and incorporated by reference, the terms of the separation agreement. Mrs. Mitchell now appeals the terms set forth in the final divorce order.

## II.

### STANDARD OF REVIEW

■ The standard of review applicable to this case was set out in Syllabus point 1 of *Burnside v. Burnside*, 194 W.Va. 263, 460 S.E.2d 264 (1995):

> In reviewing challenges to findings made by a family law master that also were adopted by a circuit court, a three-pronged standard of review is applied. Under these circumstances, a final equitable distribution order is reviewed under an abuse of discretion standard; the underlying factual findings are reviewed under a clearly erroneous standard; and questions of law and statutory interpretations are subject to a de novo review.

With this standard of review, we turn to the issues presented.

## III.

### DISCUSSION

#### A. Failure To Require Financial Disclosure Statements

■ Neither party disputes the fact that financial disclosure forms were not submitted in this case. Mrs. Mitchell contends that it was necessary for financial disclosure statements to be filed because the separation agreement failed to appropriately account for all assets. Mr. Mitchell argues that the separation agreement does, in fact, adequately reflect all assets. This Court has held that "W. Va.Code § 48–2–33 [1993], requires a full

disclosure of one spouse's financial assets to the other spouse at the time of divorce, and contemplates a meaningful hearing on the subject of equitable distribution of property at which the spouse submitting financial data may be cross-examined concerning the nature, origin and amount of assets." Syl. pt. 1, *Hamstead v. Hamstead*, 178 W.Va. 23, 357 S.E.2d 216 (1987), *overruled on other grounds*, *Roig v. Roig*, 178 W.Va. 781, 364 S.E.2d 794 (1987).

■ The financial disclosure issue is controlled by our decision in *Preece v. Preece*, 195 W.Va. 460, 465 S.E.2d 917 (1995). In *Preece*, a separation agreement was adopted by the trial court in lieu of the submission of financial disclosure forms. We reversed and remanded the case, *in part*, because of the failure to utilize financial disclosure forms. This Court further stated in Syllabus point 2 of *Preece*, *in part*, that "[t]he existence of a separation agreement does not alter the requirements of [W. Va. Code § 48–2–33], nor does West Virginia Code § 48–2–16(a) (1995), dealing specifically with separation agreements, carve any exemption from disclosure for divorces in which separation agreements are present." In the instant proceeding, upon remand of this case, the parties must submit financial disclosure forms.[6]

#### B. Distribution Of Marital Property

■ Mrs. Mitchell contends that the marital property distribution provided for in the separation agreement is unconscionable and, therefore, the marital property distribution contained therein should be nullified. Mrs. Mitchell seeks an equitable distribution of all marital property as provided for by W. Va. Code § 48–2–32 (1996). Mr. Mitchell argues that the separation agreement is valid and

---

**5.** The order indicated that under the child support formula Mr. Mitchell was obligated to pay $540.00 per month child support. However, the order reduced the obligated amount because Mr. Mitchell was paying child support in the amount of $429.00 for a child from a previous marriage.

**6.** "Generally the disclosure procedure in a divorce or child support case is as follows: (1) both parties should provide the asset, liability and other relevant information required under Rule 11 of the Rules of Practice and Procedure

for Family Law [1993] on the standard forms promulgated by this Court, that have been provided to the clerk of every circuit court; and (2) if this disclosure is deemed insufficient, the party seeking additional disclosure/discovery, must move the family law master for a discovery order under Rule 81(a)(2) of the West Virginia Rules of Civil Procedure [1999]." Syl. pt. 3, *State ex rel. Erickson v. Hill*, 191 W.Va. 320, 445 S.E.2d 503 (1994).

should be enforced, insofar as marital property is concerned.

Under W. Va.Code § 48–2–16(a) (1984), a circuit court must conform its final divorce order to the separation agreement of the parties "if the court finds that the agreement is fair and reasonable, and not obtained by fraud, duress or other unconscionable conduct by one of the parties[.]" In *Preece v. Preece*, we addressed the circuit court's obligation to determine the fairness of marital property distribution contained in a separation agreement. We indicated in *Preece*, "that the court's inquiry into the issue of whether the agreement is fair and reasonable 'requires a disclosure of the financial background of the parties sufficient to justify the conclusion of the court or master.'" *Preece*, 195 W.Va. at 464, 465 S.E.2d at 921 (*quoting, Gangopadhyay v. Gangopadhyay*, 184 W.Va. 695, 699, 403 S.E.2d 712, 716 (1991)).

We believe the decision in *Preece* is dispositive of the marital property issue in this case. This Court found in *Preece* that because financial disclosure forms had not been submitted by the parties, the trial court could not fairly determine the legality of the marital property distribution contained in the separation agreement. Therefore, we remanded the case with instructions that the trial court reconsider the fairness and reasonableness of the separation agreement in conjunction with the appropriate financial disclosure data. In the instant proceeding, the trial court did not have financial disclosure data to assist it in making a determination of whether the property distribution contained in the separation agreement was fair and reasonable. Therefore, on remand the trial court must reevaluate the legality of the marital property distribution contained in the separation agreement in conjunction with financial disclosure data.

**7.** Mrs. Mitchell's brief suggests that under the formula Mr. Mitchell was obligated to pay $730.00 per month child support.

**8.** We note that Mrs. Mitchell's brief indicates she was pregnant with child at the time of the divorce (presumably the child has now been born). The final order does not address the pregnancy, with respect to custody of the expectant child nor

### C. Amount Of Child Support Awarded

■ Mrs. Mitchell raises the issue that the amount of child support awarded was inconsistent with the child support formula contained in W. Va.Code § 48A–1B–3. We have previously ruled that " '[t]he amount of child support shall be in accordance with the child support guidelines established ... unless the family law master or the court shall determine, in a written finding or a specific finding on the record, that the application of the guidelines would be either unjust, inappropriate, waived by the parties ..., or contrary to the best interests of the children or the parties.' Syl. pt. 3, *in part, Gardner v. Gardner*, 184 W.Va. 260, 400 S.E.2d 268 (1990)." Syl. pt. 1, *in part, Wood v. Wood*, 190 W.Va. 445, 438 S.E.2d 788 (1993).

The final divorce order indicates that a deviation from the child support formula was proper because Mr. Mitchell was paying child support for a child from a previous marriage. According to the order, under the child support formula, Mr. Mitchell was obligated to pay $540.00 per month in child support.[7] The trial court awarded $400.00 per month as child support. The reason set out in the trial court's order does not provide this Court with sufficient facts to determine whether an abuse of discretion occurred in the court's decision to deviate from the child support formula. Part of the problem in our review relates to the lack of the financial disclosure data. On remand, the trial court must reevaluate the child support issue, in conjunction with financial disclosure data, and provide adequate findings should it deviate from the child support formula.[8]

### D. Child Custody

■ The separation agreement in this case provided for Mr. Mitchell to have custody of the oldest child and Mrs. Mitchell custody of the youngest child. The final divorce order followed the terms of the separation agree-

child support. Mr. Mitchell's brief suggests Mrs. Mitchell committed infidelity during the marriage. On remand, the trial court must make a determination of paternity of the child, if denied by Mr. Mitchell. Ultimately, if the newborn child is the child of Mr. Mitchell, the issue of custody of the newborn and child support must be addressed in the final order.

ment and awarded custody pursuant to the agreement. Mrs. Mitchell now argues that the trial court should have awarded her custody of both children based upon the primary caretaker analysis and the best interest of the children.

We provided guidance in determining the custody of children in *Garska v. McCoy*, 167 W.Va. 59, 278 S.E.2d 357 (1981). In Syllabus point 2 of *Garska* we stated that "[w]ith reference to the custody of very young children, the law presumes that it is in the best interests of such children to be placed in the custody of their primary caretaker, if he or she is fit." In Syllabus point 3 of *Garska* we defined the primary caretaker as that "natural or adoptive parent who, until the initiation of divorce proceedings, has been primarily responsible for the caring and nurturing of the child." We further explained in Syllabus point 4 of *Garska* "[i]n establishing which natural or adoptive parent is the primary caretaker, the trial court shall determine which parent has taken primary responsibility for the caring and nurturing duties of a parent." [9]

In syllabus point 5 of *Garska*, we held that "[i]f the trial court is unable to establish that one parent has clearly taken primary responsibility for the caring and nurturing duties of a child neither party shall have the benefit of the primary caretaker presumption." [10] When the primary caretaker presumption is inapplicable, the court must determine which parent is better suited for custody based on what is in the best interests of the child. *T.C.B. v. H.A.B.*, 173 W.Va. 410, 412, 317 S.E.2d 174 176 (1984).

Apart from the primary caretaker rule and the best interest of the child rule, parties may enter a separation agreement which designates the custody of children. W. Va.Code § 48-2-1(h) (1992), provides, *in part,* that " '[s]eparation agreement' means a written agreement entered into by a husband and wife whereby they agree ... to provide for the custody ... of their minor child or children[.]" *Gangopadhyay v. Gangopadhyay*, 184 W.Va. 695, 696 n. 3, 403 S.E.2d 712, 713 n. 3 (1991). However, we pointed out in *Lowe v. Lowe*, 179 W.Va. 536, 539, 370 S.E.2d 731, 734 (1988) that "[s]uch an agreement, however, cannot be binding on a court in determining custody issues, since the welfare of the child controls this determination."

Our concern on the child custody issue is that the final divorce order does not articulate any findings to support adoption of the child custody provisions in the separation agreement. It is incumbent upon the trial court, upon remand, to set out findings which indicate that it is in the best interest of the children that custody be awarded consistent with the terms of the separation agreement.

### E. Alimony

The separation agreement waived any right that both parties may have had to alimony. The final order found such waiver by the express terms of the agreement. We have long held that courts should attempt to conform the relief granted in a divorce order with the separation agreement reached by the parties, if such agreement is fair, reason-

---

9. In *Garska*, we also set forth several specific duties performed for the child that the trial court should examine in determining which parent is the primary caretaker. These duties include:
   (1) preparing and planning of meals;
   (2) bathing, grooming and dressing;
   (3) purchasing, cleaning, and care of clothes;
   (4) medical care, including nursing and trips to physicians;
   (5) arranging for social interaction among peers after school;
   (6) arranging alternative care, i.e. babysitting, day care, etc.;
   (7) putting child to bed at night, attending to child in the middle of the night, waking child in the morning;
   (8) disciplining, i.e., teaching general manners and toilet training;
   (9) educating, i.e.,' religious, cultural, social, etc.; and
   (10) teaching elementary skills, i.e., reading, writing and arithmetic.
   *Garska*, 167 W.Va. at 69–70, 278 S.E.2d at 363.

10. In Syllabus point 7 of *Garska*, we said, *in part:*
    Where there is a child under fourteen years of age, but sufficiently mature that he [she] can intelligently express a voluntary preference for one parent, the trial judge is entitled to give that preference such weight as circumstances warrant, and where such child demonstrates a preference for the parent who is not the primary caretaker, the trial judge is entitled to conclude that the presumption in favor of the primary caretaker is rebutted.

able, and enforceable. *Lowe v. Lowe,* 179 W.Va. 536, 539, 370 S.E.2d 731, 734 (1988). In the instant proceeding, we have concerns with the reasonableness of the separation agreement as it pertains to alimony.

■ Mrs. Mitchell was a homemaker throughout the marriage. Mr. Mitchell was employed as a miner, and had an income of over $65,000.00 per year. It does not seem reasonable to us that, at a minimum, rehabilitative alimony was not considered under such facts. "The concept of 'rehabilitative alimony' generally connotes an attempt to encourage a dependent spouse to become self-supporting by providing alimony for a limited period of time during which gainful employment can be obtained." Syl. pt. 1, *Molnar v. Molnar,* 173 W.Va. 200, 314 S.E.2d 73 (1984). In Syllabus point 3 of *Molnar* we indicated that:

> There are three broad inquiries that need to be considered in regard to rehabilitative alimony: (1) whether in view of the length of the marriage and the age, health, and skills of the dependent spouse, it should be granted; (2) if it is feasible, then the amount and duration of rehabilitative alimony must be determined; and (3) con-

sideration should be given to continuing jurisdiction to reconsider the amount and duration of rehabilitative alimony.[11]

Upon remand, the trial court should consider awarding rehabilitative alimony in an appropriate amount and upon reasonable terms.[12]

### F. Impropriety By Plaintiff's Counsel

■ Mrs. Mitchell argues that counsel for Mr. Mitchell supplied the information provided in her answer to the complaint in this case. Obviously, "[a] plaintiff's lawyer should not prepare an answer for the defendant in any divorce, regardless of whether the divorce is uncontested and simple." Syl. pt. 5, *Walden v. Hoke,* 189 W.Va. 222, 429 S.E.2d 504 (1993). "The likelihood of prejudice is so great with dual representation so as to make adequate representation of both spouses impossible, even where the separation is 'friendly' and the divorce uncontested." Syl. pt. 4, *in part, Walden v. Hoke, supra.*

Counsel for Mr. Mitchell denies that he, or anyone in his office, assisted Mrs. Mitchell with her answer to the complaint. Although this issue was presented to the trial court,

11. W. Va.Code § 48-2-16(b) (1984) lists 16 factors that should be considered in determining the amount of alimony:

(1) The length of time the parties were married;

(2) The period of time during the marriage when the parties actually lived together as husband and wife;

(3) The present employment income and other recurring earnings of each party from any source;

(4) The income-earning abilities of each of the parties, based upon such factors as educational background, training, employment skills, work experience, length of absence from the job market and custodial responsibilities for children;

(5) The distribution of marital property to be made under the terms of a separation agreement or by the court under the provisions of section thirty-two [§ 48-2-23] of this article, insofar as the distribution affects or will affect the earnings of the parties and their ability to pay or their need to receive alimony, child support or separate maintenance;

(6) The ages and the physical, mental and emotional condition of each party;

(7) The educational qualifications of each party;

(8) The likelihood that the party seeking alimony, child support or separate maintenance can substantially increase his or her income-earning abilities within a reasonable time by acquiring additional education or training;

(9) The anticipated expense of obtaining the education and training described in subdivision (8) above;

(10) The costs of educating minor children;

(11) The costs of providing health care for each of the parties and their minor children;

(12) The tax consequences to each party;

(13) The extent to which it would be inappropriate for a party, because said party will be the custodian of a minor child or children, to seek employment outside the home;

(14) The financial need of each party;

(15) The legal obligations of each party to support himself or herself and to support any other person; and

(16) Such other factors as the court deems necessary or appropriate to consider in order to arrive at a fair and equitable grant of alimony, child support or separate maintenance.

12. Because the record does not disclose sufficient facts, we remind the trial court that rehabilitative alimony may not be practical and an award of alimony be may necessary. The trial court must articulate in its order the reasons justifying its decision regarding alimony.

the record does not disclose any ruling or findings on the issue by the trial court. Therefore, we must remand this issue to the trial court for further development.[13]

## IV.

## CONCLUSION

In view of the foregoing, we reverse this case and remand it to the Circuit Court of Wyoming County for further review consistent with this opinion.

Reversed and Remanded.

---

13. We note that Mrs. Mitchell did not appeal that part of the order granting the divorce.